## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTOPHER DEANNI,**                    :

        **Plaintiff**          :   **CIVIL ACTION NO. 3:13-CV-02180**

    **vs.**                         :          **(JUDGE MANNION)**

**CAROLYN W. COLVIN, ACTING**   :
**COMMISSIONER OF SOCIAL**
**SECURITY,**                              :

        **Defendant**         :

### MEMORANDUM

### BACKGROUND

The record in this action has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying Plaintiff Christopher Deanni's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

Deanni protectively filed his applications for DIB and SSI on October 21 and 22, 2010, respectively. Tr. 46-47, 115-117 121 and 138.[1] In

---

[1] References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on October 30, 2013.

the present applications for DIB and SSI Deanni claims that he became disabled on December 31, 2008.  Tr. 121 and 128. Deanni contends that he is disabled because of degenerative disc disease of the lumbar spine and the pain associated with that condition. Doc. 10, Plaintiff's Brief, p. 2. Deanni contends that the impetus for that condition and pain is a work-related injury sustained on September 24, 2003. Id. Deanni's date last insured for disability benefits is August 11, 2009. Id.

The applications were initially denied by the Bureau of Disability Determination on March 3, 2011. Tr. 50-58. On April 21, 2011, Deanni requested a hearing before an administrative law judge ("ALJ"). Tr. 69-70. A hearing was held before an ALJ on March 5, 2012. Tr. 16-45. Deanni was represented by counsel at the hearing. Id. On March 23, 2012, the ALJ issued a decision denying Deanni's applications. Tr. 10-15. The ALJ, after considering the medical records and the testimony of Deanni and a vocational expert, found that Deanni had the functional ability to engage in a limited range of light work, and consequently, he was not disabled under the Act. Tr. 11-12 and 14-15.

On April 23, 2012, Deanni filed a request for review with the Appeals Council. Tr. 5-6. The Appeals Council on June 19, 2013, concluded

that there was no basis upon which to grant Deanni's request for review. Tr. 1-3. Thus, the ALJ's decision stood as the final decision of the Commissioner.

Deanni then filed a complaint in this court on August 19, 2013. Supporting and opposing briefs were submitted and the appeal became ripe for disposition on January 27, 2014, when Deanni elected not to file a reply brief.

Deanni was born on January 20, 1975, and at all times relevant to this matter was considered a "younger individual" whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. §§404.1516(c) and 416.963(c) .

Deanni, who attended regular education classes during his elementary and secondary schooling, graduated from high school in 1994, and can read, write, speak and understand the English language and perform basic mathematical functions such as paying bills, counting change, handling a savings account and using a checkbook and money orders. Tr. 21, 40, 142, 144 and 152. After graduating from high school Deanni attended carpentry trade school for four years which he completed in 2000. Tr. 21 and 144.

Deanni's work history covers 17 years and at least 12 different employers. Tr. 122-126. The records of the Social Security Administration

reveal that Deanni had earnings in the years 1989 through 2005. Tr. 124.

The vocational expert who testified at the administrative hearing identified Deanni's past relevant work as follows: (1) a foundry worker described as semiskilled, medium work, (2) an automobile salesperson described as skilled, light work, and (3) as a carpenter described as skilled, medium work. Tr. 40. Deanni reported that he had employment as a foundry worker from August, 2004 to December 2004; a car salesman from May, 2004 to August, 2004; and a carpenter from May, 1996 to September, 2003. Tr. 128. Deanni has not worked since his alleged disability onset date of December 31, 2008. Tr. 143.

At the administrative hearing, Deanni testified that he had back spasms that radiated into his legs. Tr. 22. He reported that his back spasm were so severe that they caused him to fall to the ground. Tr. 35. He said he could not sit for more than twenty minutes. Tr. 24. He typically drove his wife to work, a fifteen minute ride, so he could retain the car to run local errands. Tr. 34. He performed light household chores with breaks. Tr. 29-30. He also performed work for friends, such as painting a door and the trim. Tr. 33.

For the reasons set forth below, we will affirm the decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. §405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d

1520,1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not

substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,    engage in

> any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. §416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[2] (2) has an impairment that is severe or a combination of impairments that is severe,[3] (3) has an impairment or combination of impairments that meets or equals the requirements of a

---

[2]If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[3] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

listed impairment,[4] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[5]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1("'Residual functional capacity' is

---

[4]If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. §404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[5]If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## MEDICAL RECORDS

Before addressing the administrative law judge's decision and the arguments of counsel, the court has reviewed Deanni's relevant medical records, beginning with the records which predate Deanni's alleged disability onset date of December 31, 2008.

Deanni injured his back in 1999, but it improved with conservative treatment and medication. Tr. 240. However, in September, 2003, Deanni allegedly reinjured his back while exiting his work truck. Tr. 346. Following a trip to the emergency department at Christ Hospital located in Jersey City, New Jersey, Deanni was examined and treated by Paul Foddai, M.D., an orthopedic surgeon, and began physical therapy. Tr. 176-195. Dr. Foddai also prescribed the narcotic pain medication Vicodin. Tr. 247 and 273. In January, 2004 Yuhlin Lin, M.D., a pain management specialist, administered facet joint injections, facet nerve blocks and epidural steroid injections to various levels of Deanni's lumbosacral spine. Tr. 269-271. Dr. Lin's diagnostic assessment was that Deanni suffered from lumbar facet syndrome

on the right side and multi-level degenerative disc disease of the lumbar spine. Tr. 269.

On February 10, 2004, Deanni underwent a series of x-rays of the lumbar spine which revealed "[g]eneralized demineralization with multiple Schmorl's nodes[6] throughout the lumbar region except for L-5" and "[m]ild disc space narrowing at T12-L1, L1-L2, and L5-S1" but he had "[n]o evidence of fracture or subluxation."[7] Tr. 239.

On February 20, 2004, Deanni had an appointment with Joseph Lombardi, M.D., an orthopedic specialist, at which Deanni complained of "aching lower back pain" for 4 ½ to 5 years. Tr. 264. A physical examination of Deanni performed by Dr. Lombardi revealed no abnormalities in Deanni's upper extremities. Deanni had severe spasm in his paraspinal muscles and decreased range of motion in the lumbosacral spine. His hips and knees were completely normal, as were his reflexes in the lower extremities. His

_____

[6]Schmorl's nodes are upward and downward protrusions of a spinal disk's soft tissue into the bony tissue (vertebral endplates) of an adjacent vertebra. Definition of Schmorl's node, MedicineNet.com,http://www.medterms.com/script/main/art.asp?articlekey=14 007.

[7]Subluxation is "an incomplete or partial dislocation." Dorland's Illustrated Medical Dictionary, 1791 (32nd Ed. 2012).

muscle strength in the lower extremities was completely normal except for the extensor hallucis longus[8] on the right. His sensation in the lower extremities was normal except he had reduced perception of light touch and pinprick in the lateral aspect of the left foot. He had positive bilateral straight leg raising tests, positive clonus[9] of the bilateral feet, and he had tenderness over the posterior lumbosacral spine. Tr. 265-266. Dr. Lombardi also noted that Deanni used a cane with the right hand. Tr. 266. Dr. Lombardi's diagnostic assessment was that Deanni suffered from disc bulges at the L2-L3 and L5-S1 levels of the spine. Id. Dr. Lombardi further stated that an MRI of the lumbar spine could not explain why Deanni was having so much pain. Id. Dr. Lombardi ordered an electromyography (EMG) of Deanni's bilateral legs and an MRI of his cervical and thoracic spine and prescribed the pain medication Norco. Id. Dr. Lombardi also referred Deanni to another orthopedist, David Idank, D.O., for a consultation. Tr. 261 and 267.

---

[8]The extensor hallucis longus is a muscle of the foot that is responsible for extending the big toe, dorsiflexing the foot (moving the toes towards the shin) and assisting with foot eversion (turning the foot laterally resulting in the sole moving outward) and inversion (turning the foot medially resulting in the sole moving inward).

[9]Clonus is defined as "alternate muscular contraction and relaxation in rapid succession" and "a continuous rhythmic reflex tremor initiated by the spinal cord below an area of spinal cord injury, set in motion by reflex testing." Dorland's Illustrated Medical Dictionary, 373 (32nd Ed. 2012).

The consultation with Dr. Idank occurred on February 26, 2004, after Deanni underwent nerve conduction studies and an EMG. Tr. 261-263. In the report of this appointment Dr. Idank stated that an MRI of September, 2003, revealed mild facet arthropathy at the L5-S1 level of the spine, moderate degenerative disc changes at the T12-L1, L1-L2, L2-L3 and L5-S1 levels of the spine with minimal disc bulging at L2-L3 and L5-S1 and no disc herniations or stenosis. Tr. 261. A physical examination of Deanni performed by Dr. Idank revealed normal muscle strength, sensation and reflexes in the bilateral lower extremities and no edema or atrophy. Tr. 262. Dr. Idank found no evidence to strongly suggest lumbosacral radiculopathy and stated that the nerve conduction studies were normal. Id.

On March 1, 2004, Deanni underwent an MRI of the thoracic and cervical spine which revealed no evidence of disc herniations, neural foraminal impingement or spinal stenosis. Tr. 259-260.

On March 12, 2004, Deanni had a follow-up appointment with Dr. Lombardi at which Deanni stated that he felt the same. Tr. 255. The results of a physical examination of Deanni performed by Dr. Lombardi were the same as those reported on February 20, 2004. Tr. 255-257. The diagnostic assessment remained the same and Dr. Lombardi further noted that he had

a long discussion with Deanni and that he did not feel that Deanni had "any pathology coming from the spine to explain [his] symptoms." Tr. 257. Dr. Lombardi recommended a neurology consultations. Id.

The next medical record is from March 3, 2005, when Deanni, after the passage of over a year, had an appointment with Dr. Foddai at which Deanni complained of low back pain. Tr. 249. Dr. Foddai prescribed the nonsteroidal anti-inflammatory drug Mobic. Id. At a follow-up appointment with Dr. Foddai on March 31, 2005, Deanni reported that the Mobic provided him with some relief. Tr. 250. After that appointment Deanni did not return to Dr. Foddai until December, 2005, at which time Dr. Foddai prescribed a TENS unit and the narcotic pain medication Darvocet. Tr. 243.

On August 9, 2006, Deanni was examined by Theodora Maio, M.D., in connection with a workers' compensation proceeding filed by Deanni. Tr. 234-238. During that examination Deanni complained of lower back pain radiating down both legs which was aggravated by prolonged sitting, standing or walking, bending or lifting, and inclement weather. Tr. 234. Dr. Maio noted that Deanni ambulated with a cane at all times. Id. A physical examination revealed that Deanni had "mild curve flattening extending from the lumbosacral region through the lumbodorsal junction;" he had tenderness in

14

the region of the shoulder blades; he had limited range of motion of the lumbar spine; he had positive bilateral straight leg raise tests; he had negative bilateral Patrick's tests;[10] and he had normal deep tendon reflexes. Tr. 235. Dr. Maio's diagnostic assessment was that Deanni suffered from "[s]tatus post-traumatic sprain/strain injury to the lumbosacral spine with disc bulging L2-3 and L5-S1 secondary to repetitive, cumulative trauma with superimposed injury with residuals of lumbosacral myositis and fibromyositis with loss of range of motion, power and function." Tr. 236. Under the New Jersey workers' compensation system he gave Deanni "a permanent orthopedic disability of 45% of total" and that "the injury on 9/24/2003 [was] the proximal cause[.]" Id.

In September, 2006, Deanni had an appointment with Dr. Lin who reported that Deanni "responded well and enjoyed a relatively pain-less period until a recent, progressive recurrence of the left low back pain." Tr. 298. A physical examination of Deanni revealed subjective complaints of pain with movement of the lumbar spine. He had negative Patrick's tests for hip joint function; he had equivocal Flamingo tests for sacroiliac joint problems; he was able to walk on his heels and toes; and he had negative bilateral

---

[10]Patrick's test is a pain provocation test which reveals problems at the hip and sacroiliac regions.

straight leg raising tests. Id. Dr. Lin's diagnostic assessment was that Deanni suffered from degenerative disc disease and spondylosis at the L2 through-S1 levels of the lumbosacral spine and lumbago. Id. In October and December, 2006, Dr. Lin administered a series of facet blocks and epidural injections to Deanni's lumbar and sacral spine. Tr. 244-245 and 287-288. Following the procedures, Deanni showed "much improvement" and no motor or sensory deficits existed. Tr. 245 and 288. After the appointment in December, 2006, the administrative record did not reveal any further treatment records for back pain.

Although there were no further treatment records, there were consultative examinations of Deanni in connection with his workers' compensation claim as well as a consultative examination and review of his medical records by two physicians in connection with his claim for social security disability benefits.

On March 5, 2009, Deanni was examined by Ivan R. Dressner, M.D., in connection with his workers' compensation claim. Tr. 331-336. Dr. Dressner after conducting a clinical interview, physical and mental status examinations and reviewing the medical records, stated that Deanni walked with an "unusual gait" that "was not the gait that one would expect with a back

problem." Tr. 335. Dr. Dressner described Deanni's gait as "exaggerated." Tr. 336. He found no ataxia[11] or weakness and Deanni's reflexes appeared symmetrical. Tr. 335. Deanni had minor hyperesthesia[12] that was not consistent and did not represent a bonafide neurological problem attributable to Deanni's back condition. Id. Deanni had no muscle spasm, but straight leg raising appeared positive. Id. Dr. Dressner concluded that "[t]here is no objective evidence on this examination of neurological dysfunction[.]" Tr. 336.

On March 18, 2009, Deanni was examined by Malcolm G. Coblentz, M.D., in connection with his workers' compensation claim. Tr. 337-345. A physical examination revealed that Deanni ambulated with a slow stride. Tr. 339. Deanni had a reduced range of motion of the lumbar spine. Tr. 340. Palpation of Deanni's spinous processes and the sacroiliac joints revealed no gross abnormalities. Id. He had no spasms of the paraspinal muscles. Id. With the most minimal palpation, Deanni complained of deep lumbar pain which Dr. Coblentz noted was out of proportion to the minimal

---

[11]Ataxia is defined as "failure of muscular coordination; irregularity of muscular action." Dorland's Illustrated Medical Dictionary, 170-171 (32nd Ed. 2012).

[12]Hyperesthesia is defined as "[a distortion of any sense] consisting of increased sensitivity, particularly, a painful sensation from a normally painless touch stimulus." Dorland's Illustrated Medical Dictionary, 577& 888 (32nd Ed. 2012).

pressure applied and "consistent with the nonorganic physical signs of Waddell."[13] Id. Straight leg raising was negative in the seated position. Id. In the supine position, Deanni could only perform straight leg raising to forty degrees on the right and five degrees on the left which Dr. Coblentz noted was in contrast to the sitting straight leg raising tests. Id. Dr. Coblentz stated that Deanni had some degenerative pathology but no specific disc herniation or nerve root impairments. Tr. 343. He also stated that Deanni demonstrated resistance during the examination and exaggerated and embellished his symptoms as evidenced by the non-organic physical signs of Waddell and the global weakness of the right and left legs. Tr. 344. Dr. Coblentz noted that Deanni stated that he had applied for Social Security disability and opined that Deanni "is probably capable of some occupational duties." Id.

On September 14, 2009, Deanni was again examined by Dr. Maio in connection with the workers' compensation proceeding. Tr. 346-350. During that examination Deanni complained of lower back pain radiating

---

[13]Waddell signs are defined as "five signs indicating that a patient's low back pain is being intensified by psychological factors: tenderness that is not localized but spread over a wide area; production of pain by rotation of the pelvis or shoulder; decrease in pain behavior when the patient is distracted by the examiner; weakness or sensory disturbance that is not limited in a normal anatomic distribution; and overreaction, i.e., excessive body language or verbalization during the examination." Dorland's Illustrated Medical Dictionary, 1716 (32nd Edition 2012).

down both legs which was aggravated by prolonged sitting, standing or walking, bending or lifting, and inclement weather. Tr. 234. Dr. Maio noted that Deanni ambulated with a cane at all times. Id. A physical examination revealed that Deanni had "marked flattening of the lumbar and lumbodorsal curves;" he had marked tenderness through the flanks, buttocks, posterior thigh and iliac crest areas bilaterally; he had limited range of motion of the lumbar spine; he had positive bilateral straight leg raise tests; and he had positive bilateral Patrick's tests. Tr. 235. Dr. Maio's diagnostic assessment remained the same. Tr. 349. Under the New Jersey workers' compensation system he gave Deanni an "orthopedic disability [of] 66 2/3% of total" and stated that "the accident on September 24, 2003 [was] the proximal cause[.]" Id.

On January 25, 2011, Barry Kutzer, M.D., evaluated Deanni on behalf of the Bureau of Disability Determination. Tr. 310-312. A physical examination revealed that Deanni had mildly decreased motor strength of the left leg. Tr. 311. From a musculoskeletal standpoint, Dr. Kutzer reported that Deanni had "full range of motion" with "some lumbar paraspinal spasm noted on the left." Id. A neurological examination revealed that Deanni had normal motor strength and sensation in his legs. Tr. 312. Deanni walked slowly but

had a steady gait and did not need an assistive device. Tr. 314.

On or about March 1, 2011, Gerald A. Gryczko, M.D., reviewed Deanni's medical records on behalf of the Bureau of Disability Determination and concluded that Deanni had the functional ability to engage in a limited range of light work. Tr. 320-326. Specifically, Dr. Gryczko opined that Deanni could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch and use ramps and climb stairs but never climb ladders or crawl; and Deanni had to avoid concentrated exposure to hazards, such as moving machinery and heights. Tr. 321-323. The record also reveals that Deanni is blind in the left eye. Tr. 338. The blindness was referred to as congenital or existing from birth. Id.

No treating physicians provided an assessment of whether or not Deanni's impairments met or equaled the requirements of a listed impairment or an assessment of Deanni's work-related physical functional abilities, such as his ability to sit, stand, walk, lift, carry, push and pull.

## DISCUSSION

The ALJ went through the five-step sequential evaluation process and found at step five that Deanni was not disable. The severe impairments

found at step two were left eye blindness, degenerative disc disease of the lumbar spine, and obesity. Tr. 11. At step three, the ALJ found that Deanni's impairments did not meet or medically equal the requirements of any listed impairment. Id. With respect to the residual functional capacity the ALJ found that Deanni could not perform his past relevant work but he could perform a limited range of light work. Tr. 11-14. Specifically, Deanni could engage in light work as defined in the regulations except he had to be permitted to use a cane while walking away from his work station; he had to have the option to alternate positions at will; he could only occasionally ben, stoop, kneel, crouch and crawl; he could never climb; and he had to avoid unprotected heights and dangerous moving machinery. Tr. 11. In setting the residual functional capacity, the ALJ reviewed the medical evidence, including the notes of Deanni's treating physicians, the reports from the consultative examiners relating to Deanni's workers' compensation claim, and relied on the opinions of Dr. Kutzer and Dr. Gryczko. Tr. 13. In addition the ALJ found that Deanni's statements about his physical functional limitations were not credible. Tr. 12. The ALJ in addressing Deanni claim that he was disabled as the result of pain stated as follows:

> The claimant described daily activities which are not limited to the extent one would expect, given the

complaints of disabling symptoms and limitations.

The claimant complains of severe pain. It is my conclusion that the pain experienced by the claimant is limiting, but when compared with the total evidence, not severe enough to preclude all types of work. The issue is not the existence of pain, but rather the degree of incapacity incurred because of it. While the claimant complains of severe pain, it does not seem reasonable to conclude from the findings in evidence that such could be the basis for the degree of pain alleged. The claimant does not appear to be experiencing progressive physical deterioration which might be expected when there is intense and continuous pain.

This is not to say the claimant is pain-free; however, the evidence does not support a finding that his pain is disabling. It did not appear that the claimant's pain is of such frequency, intensity, or duration as to be disabling. The evidence of record failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities which would establish the existence of a pattern of pain of such severity that would contraindicate claimant's engaging in all substantial gainful activity.

Tr. 12-13.

At step five based on the above residual functional capacity and the testimony of a vocational expert the ALJ found that Deanni could perform work as a file clerk, bank teller, and security guard, and that there were a significant number of such positions in the regional and national economies. Tr. 14. All of these positions were identified by the vocational expert as light

work. Tr. 41-42.

Deanni argues that the administrative law judge erred by (1) failing to find that he met Listing 1.04A relating to disorders of the spine, and (2) improperly discounting his subjective complaints of pain. After a thorough review of the record in this case there does not appear to be merit in Deanni's arguments.

Deanni's first argument is premised on the contention that he met or equaled the requirements of Listing 1.04A. If Deanni's severe impairment met or equaled a listed impairment, he would have been considered disabled per se and awarded disability benefits. However, a claimant has the burden of proving that his or her severe impairment or impairments meet or equal a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. §1520(d) and §416.920(d). To do this a claimant must show that all of the criteria for a listing are met or equaled. Id. An impairment that meets or equals only some of the criteria for a listed impairment is not sufficient. Id. Furthermore, the Commissioner's Listings contemplate that findings satisfying the required criteria will be consistently documented over a period of time, not just on isolated examinations. 20 C.F.R., pt. 404, subpt. P, app. 1, §1.00D ("Because abnormal physical findings may be intermittent, their presence

over a period of time must be established by a record of ongoing management and evaluation."); id. §1.00H(1)("Musculoskeletal impairments frequently improve with time or respond to treatment; [t]herefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment . . . .").

The determination of whether a claimant meets or equals a listing is a medical one. The Social Security regulations require that an applicant for disability insurance benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. §404.1512(c). Consequently, a claimant must present medical evidence or opinion that his or her impairment meets or equals a listing.

To satisfy Listing 1.04A, Deanni had the burden of proving that he had a disorder of the spine, (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture) resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression characterized by neuro-

anatomic distribution of pain; limitation of motion of the spine; motor loss (atrophy with associated muscle weakness or muscle weakness); accompanied by sensory or reflex loss; and, if there is involvement of the lower back, with positive straight-leg raising tests in the sitting and supine position. 20 C.F.R. pt. 404, subpt. P, app. 1, §1.04 (2011)(emphasis added).

Deanni has proffered no medical opinion, nor has he marshaled the evidence in the record, to support his contention that his condition met or equaled the requirements of a listed impairment. The record is devoid of positive straight-leg raising tests during the relevant time period in the sitting and supine position. Furthermore, the evidence prior to the alleged disability onset date does not reveal consistent findings of positive SLR tests. Deanni does not identify, and the record does not appear to contain, an express finding of nerve root compression. Furthermore, there is no consistent evidence that Deanni's motor strength, sensation, reflexes and pulses were abnormal.

No treating or examining physician offered an opinion as to how Deanni's impairments limited his functional capabilities or ability to work and the bare medical records do not support Deanni's claim of total disability, including his claim that he met Listing 1.04A.

No physician who treated Deanni indicated that Deanni was totally disabled for the requisite 12 month period required by the statute. However, Dr. Gryczko, a state agency physician, in March, 2011, reviewed Deanni's medical records and concluded that Deanni had the functional ability to engage in a range of light work. The administrative law judge's reliance on that opinion was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011) ("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

To the extent that Deanni argues that the ALJ should have found in his favor based on the testimony he presented at the administrative hearing regarding the pain from which he suffered, the administrative law judge was not required to accept Deanni's claims of disabling pain. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a

witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed and heard Deanni testify, the administrative law judge is the one best suited to assess his credibility.

We are satisfied that the administrative law judge appropriately took into account all of Deanni's physical limitations in the residual functional capacity assessment.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. §405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: September 30, 2014
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2180-01.wpd